UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY SEGUIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF TULARE,<br><br>Defendant. | No. 1:16-cv-01262-DAD-SAB<br><br>ORDER APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE<br><br>(Doc. No. 60) |

This matter is before the court on the joint motion for approval of the settlement agreement. (Doc. No. 60.) On April 17, 2018, that motion came before the court for hearing. Attorney David Mastagni appeared on behalf of plaintiff Henry Seguin, individually and on behalf of all others similarly situated. Attorney Jesse Maddox appeared on behalf of defendant County of Tulare. Having considered the briefing, and having heard from counsel, the court will grant the motion to approve the settlement agreement.

**BACKGROUND**

On August 25, 2016, plaintiff commenced this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, based on defendant's use of an illegal compensation computation method, which under-calculated plaintiff's regular rate of pay and

resulted in underpayment with respect to overtime hours.  (Doc. No. 1 ("Compl.") at ¶ 4.)  In his complaint, plaintiff alleges that he and the putative class members were denied proper compensation in violation of the FLSA when defendant failed to include all statutorily required forms of compensation in the regular rate of pay used to calculate plaintiffs' overtime compensation.  (*Id.* at ¶ 2.)  After the filing of the complaint, from September 9, 2016 to March 7, 2017, numerous individuals filed affidavits with the court giving written notice of their consent to join this FLSA class action as plaintiffs.  (Doc. Nos. 4–13, 15–17, 27–30, 33, 36–37, 39–40, 42–43, 45–46.)  On January 12, 2017, the parties submitted a stipulation for conditional certification of an FLSA collective action, and defined the class as consisting "of all current and former non-exempt employees of the Defendant who worked statutory overtime and received cash in lieu of health benefits payments in the same pay period at any time within three years preceding the date the current or former employee opts into this action."  (Doc. No. 24 at ¶ 3.)  On May 17, 2017, the court granted the parties' stipulation.  (Doc. No. 32.)

On January 5, 2018, with Magistrate Judge Michael J. Seng presiding over a settlement conference, the parties resolved the action and were directed to file dispositional documents and the settlement agreement for court approval.  (Doc. No. 54.)  On March 2, 2018, the parties submitted a stipulation for approval of the settlement agreement.  (Doc. No. 57.)  On March 5, 2018, Magistrate Judge Seng issued an order approving of the proposed settlement and dismissing the action with prejudice.  (Doc. No. 58.)  On March 12, 2018, Magistrate Judge Seng vacated his order approving the settlement, reopened the case, and directed the parties to notice a motion for court approval of the settlement before the undersigned.  (Doc. No. 59.)  On March 26, 2018, plaintiff moved for approval of the settlement agreement.  (Doc. No. 60.)

**LEGAL STANDARD**

Settlement of collective action claims under the FLSA requires court approval.  *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).  "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  Because an employee cannot waive claims under the FLSA, they may not be settled without

2

supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also*

*Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *recommendations adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved in order to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

**DISCUSSION**

**A.     Bona Fide Disputes**

Under the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the payment of cash in lieu of health insurance benefits ("CIL compensation") must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. There appears to be no dispute that defendant is liable for overtime payments under *Flores* to the extent CIL compensation is concerned. (*See* Doc. No. 60 at 6.) However, following further investigation, plaintiff now alleges an additional violation, in which defendant "excluded payments in lieu of observing holidays . . . to Plaintiffs employed as Firefighters." (*Id.* at 2.) This arrangement, which the parties refer to as holidays in lieu of health insurance benefits ("HIL Compensation"), was not addressed by the Ninth Circuit in *Flores*. Although district courts in this circuit have weighed in as to whether employers are liable under the FLSA for excluding cash paid to employees in lieu of observing holidays from the "regular rate" of compensation, the Ninth Circuit has not yet addressed this issue. *See Lewis v. County of Colusa*, No. 2:16-CV-01745-VC, 2018 WL 1605754, at *2 (E.D. Cal. Apr. 3, 2018) ("Whether 29 U.S.C. § 207(e)(2) applies to exempt the holiday in-lieu payments is a closer question, but the County does not show that its

4

holiday payment scheme for safety officers and dispatchers falls squarely under this exemption either."); *Hart v. City of Alameda*, No. C-07-5845MMC, 2009 WL 1705612, at *3 (N.D. Cal. June 17, 2009) ("[T]he Court is not persuaded that any of the Additional Compensation payments constitutes a payment made 'due to' a holiday."). Here, the parties disagree about whether the HIL compensation claim is meritorious. (Doc. No. 60 at 6.) Given the unsettled state of the law in this area, the court finds there to be a bona fide dispute as to this issue.

The parties also have numerous disagreements regarding the measure of liability. First, the parties disagree over the methodology to be used in calculating the "regular rate" of pay. (Doc. No. 60 at 6.) This dispute stems from a disagreement as to whether damages should be calculated based on a method for salaried non-exempt employees, or instead based on a method for hourly non-exempt employees. (*See id.* at 7.) According to the parties' pending motion, if defendant is correct that damages should be calculated based on a method for hourly employees, damages would be reduced by over 66%. (*Id.*) Second, the parties dispute whether and to what extent defendant is entitled to credits and offsets under 29 U.S.C. § 207. (*Id.*) Third, due to uncertainty in the law prior to the Ninth Circuit's decision in *Flores*, the parties dispute whether defendant acted in good faith when it failed to include CIL and HIL compensation in its calculation of overtime compensation, or if defendant would instead be subject to liquidated damages. *See Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419, at *13–14 (E.D. Cal. May 22, 2015) (finding that the failure to include a health benefit reimbursement amount in calculating the regular rate of pay was done in good faith due to uncertainty in the law at the time). Finally, the parties dispute the applicable statute of limitations. Under the FLSA, the statute of limitations is two years, which may be extended to three years if the violation is found to be willful. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988). Here, the parties dispute whether the FLSA violation at issue in this case was willful. All of these issues impact the extent of defendant's FLSA liability in this case. Based on the aspects of the action discussed above, the court is satisfied that there are bona fide disputes at issue here.

/////

/////

**B.     The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). The court addresses each of these factors below.

      1.     <u>Plaintiffs' Range of Possible Recovery</u>

Under the terms of the settlement agreement, defendant will pay plaintiff and the putative class members a total sum of $191,579.81, which represents approximately 63% of the maximum value of the claims if plaintiff and the putative class members were to prevail on every disputed issue. (Doc. No. 60 at 9.) Although it is likely after the decision in *Flores* that plaintiff would prevail on at least some theories at trial, it is far from certain that plaintiff would do so on all theories, for the reasons discussed above. (*Id.*) For instance, if plaintiff is unable to recover damages based on HIL compensation, the potential recovery would be reduced by roughly $52,000. (*Id.*) Even more significantly, the parties state that the way in which "regular rate" is calculated could alter the final damages amount in this case by over 66%. (*Id.*) Finally, whether the statute of limitations is two or three years will determine whether an additional year of damages could be awarded, further altering the recovery.

According to the declaration of plaintiffs' attorney David E. Mastagni, plaintiffs tendered a settlement demand of $384,586.63, of which $303,586.63 would go to plaintiffs and the remainder would be allocated for attorneys' fees and costs. (Doc. No. 60-1 ("Mastagni Decl.") at ¶ 8.) Defendants provided a counteroffer of $110,024.84, of which $60,024.84 would go to

plaintiffs and the remainder would be allocated for attorneys' fees and costs. (*Id.* at ¶ 9.) After evaluating the strengths and weaknesses of the parties' positions during the court supervised settlement conference, Magistrate Judge Seng proposed a global settlement of $270,000, which the parties accepted. (*Id.* at ¶ 10.) In light of the complexity of this case and the difficulty the parties face in estimating the likely value of plaintiffs' claim without conducting an exact calculation, the court finds the rationale underlying the agreement and the recovery obtained as a result to be reasonable. This factor weighs in favor of approval of the FLSA settlement.

2. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed in order to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. The Ninth Circuit's decision in *Flores* makes it likely that plaintiffs would prevail in some aspect of their claim. The parties have engaged in discovery over a period of months, which included an exchange of time and payroll data to evaluate the potential range of recovery. (Doc. No. 60 at 11.) Defendant also produced thousands of records related to hours worked and compensation paid, as well as policies, memoranda of understanding, and other local authorities governing compensation for plaintiff and the putative class members. (*Id.*) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

3. <u>The Seriousness of the Litigation Risks Faced by the Parties</u>

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Here, the named plaintiff believes his claims are meritorious but concedes that if this case were to proceed to trial, he would face uncertainties about how to

7

calculate damages due to the bona fide disputes between the parties. Plaintiff also may not recover at trial based upon defendant's alleged willful violation of the law and a finding in defendant's favor on that issue would reduce the claimed damages by 50%. (Doc. No. 60 at 11.) Additionally, at trial defendant could assert offsets and credits from the way that it calculated overtime, which was more favorable than required by the FLSA, thus reducing plaintiffs' recovery. (*Id.*) All of these concerns pose a risk to plaintiff and the putative class members and could decrease their overall recovery. Further, the parties represent that if defendant were to prevail on its contention that calculation of back pay should be based upon the method for hourly employees, plaintiff's recovery would be reduced by over 66%. (*Id.*) Accordingly, consideration of this factor weighs in favor of approval of the parties' FLSA settlement.

4. <u>The Scope of Any Release Provision in the Settlement Agreement</u>

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are, therefore, hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision is limited to claims "known or unknown, foreseen or unforeseen, arising out of the matters raised in the Complaint or related thereto as of and including the Effective Date of this Agreement," as well as "any further claims under the FLSA

8

for any alleged FLSA violation that has occurred up to and including the Effective Date of this Agreement." (Doc. No. 60 at 12.) The parties explain that this latter provision, releasing all FLSA claims whether or not they are related to the matters raised in this case, is necessary in order to account for the potential claims related to HIL compensation. (*Id.* ("The parties share an understanding that such language was necessary given that the HIL claims were not specifically pled in the Complaint.")) Having examined this provision, the court finds that by releasing all potential FLSA claims, instead of merely releasing those FLSA claims alleged in the complaint in this action, the release sweeps somewhat more broadly than is necessary. Some courts have expressed skepticism about approving releases in FLSA settlements that go beyond the scope of the litigation. *See Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2015 WL 279754, at *8 (M.D. Pa. Jan. 22, 2015) ("District courts reviewing proposed FLSA settlements may require litigants to limit the scope of waiver and release provisions to 'claims related to the specific litigation' in order to ensure equal bargaining power between the parties.") (quoting *Singleton v. First Student Mgmt. LLC*, Civ. A. No. 13–1744 JEI/JS, 2014 WL 3865853, at *8–9 (D.N.J. Aug. 6, 2014)).

      At oral argument, plaintiff's attorney conceded that the language of the release was broader than language he had ordinarily used in similar cases. While expressing some slight misgiving about the scope of the release, plaintiff's counsel explained that this language was arrived at in the course of the court supervised settlement negotiations, which necessarily involve concessions by both parties. Plaintiff's counsel also pointed out that there was widespread acceptance of the terms of the release, as indicated by the putative class members' approvals of the settlement. (Doc. No. 60-1 at 31–80; Doc. No. 60-2.) Under these unique circumstances, the court is satisfied with the parties' explanations as to the scope of the release provision.

      5.    <u>The Experience and Views of Counsel and the Opinion of Participating Plaintiffs</u>

      In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel, attorney David Mastagni, has considerable experience in litigating and settling cases asserting liability pursuant to the

*Flores* decision and has represented to the court that this settlement is fair, adequate, and in the best interests of the class members. (Doc. No. 60-1 at ¶ 14.) Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

### 6. The Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." *Slezak*, 2017 WL 2688224, at *5. Here, the court finds that there is a low probability of fraud or collusion because the settlement negotiations were presided over and facilitated by a magistrate judge of this court. *See id*. There is nothing on the face of the record to suggest plaintiff's counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). This settlement also lacks any evidence of more "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.*

Upon considering the totality of the circumstances, the court finds that the proposed settlement is a fair and reasonable resolution of the parties' bona fide disputes.

## C. Attorneys' Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a

departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

According to the terms of this settlement, plaintiff's counsel will be paid $78,420.19 in attorneys' fees and costs, out of a total settlement sum of $270,000. (Doc. No. 57-3 at 8.) Attorneys' fees and costs represent approximately twenty-nine percent of the maximum settlement amount, which is somewhat above the benchmark award but not inconsistent with awards allowed in similar cases. *See Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *6 (E.D. Cal. Mar. 13, 2018) (approving attorneys' fees and costs award of $43,414.92, which represented thirty percent of the total settlement amount); *Goodwin v. Winn Mgmt. Grp.*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA collective action, which was thirty percent of the total settlement amount); *Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a settlement of a FLSA collective action, which was thirty-one percent of the total settlement amount); *Selk*, 159 F. Supp. 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA collective action, which was forty-four percent of the total settlement amount).

The court turns to the lodestar amount in order to cross-check whether a twenty-nine percent award of attorneys' fees is appropriate here. Where a lodestar is merely being used as a

cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). The court typically applies a lodestar multiplier after multiplying a reasonable hourly rate by the number of hours worked. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts").

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno Division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with twenty-one years of experience); *Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 839–40 (E.D. Cal. 2016) (concluding that Fresno Division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14–cv–00964–MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years of experience); *Rosales v. El Rancho Farms*, No. 1:09–cv–00707–AWI,

12

2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Since these rates are only for the purposes of generally cross-checking the reasonableness of an award of one-third of the common fund as attorneys' fees, the court finds that the rates requested by plaintiffs' counsel in a prior case before this court are sufficient for this purpose and will employ those rates in calculating the lodestar. *See Beidleman*, 2018 WL 1305713, at *7. According to the affidavit of attorney Mastagni (Doc. No. 60-1 at ¶¶ 16–17.), the lodestar should be calculated as follows:

| Name | Title | Rate | Hours | Total |
|---|---|---|---|---|
| David Mastagni | Partner | 400 | 70.4 | $28,160.00 |
| Isaac Stevens | Senior Associate | 325 | 12.5 | $4,062.50 |
| Ace Tate | Associate | 225 | 188.6 | $42,435.00 |
| Carl Larson | Associate | 225 | 1.7 | $382.50 |
| Ian Sangster | Associate | 225 | 50.4 | $11,340.00 |
| Andy Horwitt | Forensic Accountant | 300 | 0.5 | $150.00 |
| Michael Lee | Forensic Accountant | 300 | 174.73 | $52,419.00 |
| Patrick Barbieri | Paralegal | 100 | 22.0 | $2,200.00 |
| Todd Thomas | Paralegal | 100 | 1.66 | $166.00 |
| | | | | **$141,315.00** |

The evidence submitted is also sufficient to establish the number of attorney hours expended on this litigation. *See Bellinghausen*, 306 F.R.D. at 264 ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C–11–00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)).

/////

Accordingly, the court finds that the lodestar amount for cross-check purposes is $141,315.00. This equates to a lodestar multiplier of approximately 0.55. As a negative modifier, this lodestar amount clearly supports the requested award of $78,420.19 of attorneys' fees in this case. Therefore, considering the lodestar cross-check, the court approves the award of $78,420.19 in attorneys' fees and costs, an amount equal to approximately twenty-nine percent of the total maximum settlement amount.

## CONCLUSION

For the forgoing reasons:

1. The parties' settlement agreement including the award of attorneys' fees and costs, which is incorporated herein by reference, is approved as fair, reasonable, and just in all respects, and the parties shall perform the settlement agreement in accordance with its terms;

2. The court expressly retains jurisdiction over this action for purposes of enforcing the settlement agreement;

3. This action is hereby dismissed with prejudice; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **April 23, 2018**

*/s/ Dale A. Drozd*
UNITED STATES DISTRICT JUDGE